IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION

**ANES SALEH**                                                                     **PETITIONER**
**Reg #40403-013**

**V.**            **CASE NO.: 2:17-CV-185-DPM-BD**

**GENE BEASLEY, Warden,**
**Federal Correctional Institution,**
**Forrest City, Arkansas**                                              **RESPONDENT**

## RECOMMENDED DISPOSITION

**I.    Procedures for Filing Objections:**

The following Recommended Disposition ("Recommendation") has been sent to Judge D. P. Marshall Jr. Any party may file written objections with the Clerk of Court within 14 days of this Recommendation. Objections must be specific and must include the factual or legal basis for the objection. An objection to a factual finding must identify the finding of fact believed to be wrong and describe the evidence that supports that belief.

By not objecting, any right to appeal questions of fact may be waived. And, if no objections are filed, Judge Marshall can adopt this Recommendation without independently reviewing the record.

**II.   Background:**

Petitioner Anes Saleh filed a petition for writ of habeas corpus under 28 U.S.C. § 2241, without the help of a lawyer, challenging a prison disciplinary conviction. (Docket entry #1) Mr. Saleh is currently in the custody of the Bureau of Prisons ("BOP")

at the Federal Correctional Institution in Forrest City, Arkansas ("FCI-FC"). He challenges a disciplinary conviction he received when he was an inmate at the BOP's Federal Correctional Institution in Florence, Colorado. The disciplinary conviction resulted in the loss of forty-one days of good-conduct time; fifteen days disciplinary segregation plus 180 days suspended; and a loss of commissary, visitation, and phone privileges for 180 days. (#1 at 3)

In his petition, Mr. Saleh claims that BOP officials violated his due process rights. Specifically, he alleges that there was insufficient evidence for the BOP's disciplinary hearing officer ("DHO") to find that he had violated the BOP's Code of Conduct, which resulted in his loss of good-conduct time. For relief, he asks the Court to order Warden Beasley to expunge the violation from his record and restore his good-conduct time. (#1 at 7)

Warden Beasley has responded to the petition. (#7) He argues that Mr. Saleh was not denied due process. (#7) Mr. Saleh has replied to the Warden's response. (#8)

### III.   Facts:

On August 15, 2016, Mr. Saleh received an incident report charging him with violation of the BOP's Code of Conduct 113, which proscribes possession of any narcotics, marijuana, drug, alcohol, intoxicants, or related paraphernalia not prescribed for the individual by a medical staff. (#7-1 at 1) The incident report was based on a search conducted on August 8, 2016, when staff found a medical vile of liquid concealed inside a jar of peanut butter in Mr. Saleh's secured locker during a mass shakedown in

2

Mr. Saleh's unit. (#1 at 8) Labeling on the medical vile indicated that it contained an injectable steroid. (#7-1 at 2) The peanut butter jar was located on the same shelf as numerous mail items and commissary receipts belonging to Mr. Saleh. (#1 at 8) After the jar was discovered, Mr. Saleh stated: "It's not mine. I don't do drugs. I don't keep my locker locked and it was planted in there." (#7-1 at 6-8)

On August 16, 2016, Mr. Saleh was given notice of a disciplinary hearing and advised of his rights. Mr. Saleh requested the presence of a staff representative and witnesses. (*Id.* at 2) There was a delay in delivering the incident report to Mr. Saleh due to an incorrect date on the original report. (*Id.* at 9-10, 13) This also caused a delay in the discipline hearing. (*Id.* at 6)

On August 26, 2016, Mr. Saleh appeared before the DHO for his hearing. Mr. Saleh stated that the peanut butter jar was not originally his, and that he had no knowledge that the medical vile was inside the jar. (*Id.* at 5) Mr. Saleh told the DHO that the referenced delay prevented him from obtaining witness testimony from Inmate Kennedy, who would have supported his claim that he received the peanut butter jar from another inmate. Mr. Kennedy passed away before the hearing. (*Id.*)

Ultimately, the DHO found that Mr. Saleh had violated Code 113, and he was subsequently sanctioned for the incident. Mr. Saleh was given the DHO's written report that detailed the evidence relied on, including the original incident report, photographs of the peanut butter jar, the medical vile found inside with the label reading "Pro Choice Pharma Mass Bulk Blend 500 For Intramuscular Injection 500 mg/ml," and close-up

photographs from the internet to help identify the substance; the DHO's findings; and the reasons for the disciplinary action taken. (*Id*. at 2, 5-8)

In relation to Mr. Kennedy, who passed away before he could give his testimony in support of Mr. Saleh, the DHO determined that Mr. Kennedy's testimony would have been irrelevant, because Mr. Kennedy could only attest that another inmate gave Mr. Saleh the jar of peanut butter but not whether Mr. Saleh had concealed the drug inside the jar. (*Id*. at 6)

The DHO also noted that he had considered Mr. Saleh's inconsistent statements regarding the peanut butter jar. First, Mr. Saleh stated that the peanut butter jar was not his, but rather, was "planted there." (*Id*. at 7) Then at the hearing, he stated that another inmate had given him the jar. (*Id*.) Based on these varying statements, the DHO concluded that Mr. Saleh was being "less than truthful" about the incident. (*Id*.)

Mr. Saleh appealed the DHO's written decision and fully exhausted the decision through the BOP's grievance process. The Regional Director and the Central Office both upheld the DHO's findings and denied relief. (#1 at 3)

**IV    Discussion:**

Before a prisoner's good-conduct time can be revoked, the prisoner is entitled to certain due process rights: (1) advance, written notice of the disciplinary charge; (2) an opportunity, with some exceptions, to call witnesses and to present a defense; and (3) a written decision by an impartial fact-finder as to the evidence relied upon and the reasons for the disciplinary action taken. *Dible v. Scholl*, 506 F.3d 1106, 1110 (8th Cir. 2007)

(citing *Superintendent v. Hill*, 472 U.S. 445, 454 (1985) and *Wolff v. McDonnell*, 418 U.S. 539, 564-571 (1974)).

The requirements of due process are satisfied if there was "some evidence" to support the DHO's decision to revoke Mr. Saleh's good-conduct time. *Hill*, 472 U.S. 445, 454-56. This Court need not examine the entire record, assess the credibility of witnesses, or weigh the evidence; instead, the Court's duty is simply to determine whether there was some evidence to support the DHO's conclusion that Mr. Saleh had violated Code of Conduct 113. *Id*. at 455. Importantly, the evidence need not logically preclude a different conclusion; rather, due process requires only a determination as to whether there was some evidence to support the DHO's findings. *Id*. at 457.

Mr. Salah does not raise any questions regarding notice, the opportunity to be heard or the impartiality of the DHO. Instead, he challenges whether there was "some evidence" to support the DHO's written decision finding him in violation of Code 113. (#1) He argues that, because there was no "reliable" or "credible" evidence presented at the hearing that the liquid substance inside the vile was indeed a narcotic, drug, steroid or anything illegal, the evidence against him was insufficient to meet the "some evidence" standard. (#1 at 6)

In this case, there was sufficient evidence to support the DHO's conclusion that the medical vile found inside the peanut butter jar in Mr. Saleh's secured locker contained a prohibited substance and that Mr. Saleh had violated Code 113. In the DHO's written report, he notes that he considered the incident report in which the officer relates

5

finding the peanut butter jar inside Mr. Saleh's secured locker. (#1 at 8) Concealed inside the peanut butter jar was a medical vile labeled "Pro Choice Pharma Mass Bulk Blend 500 For Intramuscular Injection 500 mg/ml." (#1 at 2)

In his reply to Warden Beasley's response, Mr. Saleh questions how the reporting officer knew the locker in question belonged to him. The officer's incident report explains that possession was based on the presence of other belongings of Mr. Saleh's in the locker, including mail and commissary receipts that were found on the same shelf as the peanut butter jar. (#1 at 8). In any event, a report from a correctional officer, even if disputed by the inmate and unsupported by any other evidence, constitutes "some evidence" to support a DHO's disciplinary decision. *Hartsfield v. Nichols*, 511 F.3d 826, 831 (8th Cir. 2008).

Mr. Saleh also argues that taking the label on the medical vile at face value falls short of the "some evidence" standard. (#8 at 2-3) Testing of discovered contraband is not necessary, however, to meet the some evidence standard. See *e.g. Haywood v. Rivera*, No. 2:15CV00135-JTR, 2016 WL 8929296, at *5 (E.D. Ark. May 6, 2016) (DHO relied on visual identification of prohibited pills) *aff'd,* 674 F. App'x 596 (8th Cir. 2017). The DHO made a detailed statement of the evidence he relied on to support his finding, including reports by the officers who discovered the peanut butter jar, photographs of the peanut butter jar and medical vile found inside, Mr. Saleh's statements to the officer regarding the medical vile, and the testimony of Mr. Saleh and his witness at the disciplinary hearing. Again, the evidence considered need not logically preclude a

different conclusion; rather, due process requires only that there be some evidence to support the DHO's findings. *Hill*, 472 U.S. at 457.

The officer's incident report, together with Mr. Saleh's varying statements indicating that he was "being less than truthful," provided sufficient evidence to warrant the DHO's finding that Mr. Saleh had violated Code 113.

## V.     Conclusion:

BOP officials did not deny Mr. Saleh due process during the disciplinary proceedings that resulted in his loss of good-time credits. Accordingly, Mr. Saleh's petition for a federal writ of habeas corpus should be DENIED and DISMISSED, with prejudice.

DATED this 7th day of March 2018.

_____
UNITED STATES MAGISTRATE JUDGE